**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARKEITH CLINTON, CDCR #AY1315,<br><br>                              Plaintiff,<br><br>vs.<br><br>M. POLLARD, Warden, R. BUCKEL, S. STEADMAN, ASHBURY, CORTEZ, NAHN, CRUZ, C. MOORE, DOES 1-10,<br><br>                              Defendants. | Case No.: 3:23-cv-0119-DMS-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND**<br><br>**(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

## I.     INTRODUCTION

Markeith Clinton ("Plaintiff" of "Clinton"), is a state inmate currently incarcerated at R. J. Donovan Correctional Facility ("RJD") in San Diego County and proceeding *pro se*. He has filed a civil rights action pursuant to 42 U.S.C. § 1983, along with an application to proceed *in forma pauperis* ("IFP"). ECF Nos. 1, 2. For the reasons discussed below, the Court grants Plaintiff's IFP motion but dismisses his Complaint without prejudice and with leave to amend.

## II. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners seeking to establish an inability to pay must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Plaintiff has provided a Prison Certificate authorized by an accounting officer. ECF No. 4 at 1. During the six months prior to filing suit, Plaintiff had an average monthly balance of $258.51, average monthly deposits of $316.66, and an available account balance of $382.25 at the time he filed suit. *Id*. Accordingly, Plaintiff's IFP motion is **GRANTED**. The Court assesses an initial partial filing fee of $63.33. Plaintiff remains obligated to pay the remaining $286.67 in monthly installments even if this action is ultimately dismissed. 28 U.S.C. §§ 1915(b)(1) & (2).

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2021)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

### III. SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)

#### A. Legal Standards

Pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

#### B. Plaintiff's Allegations

In his Complaint, Clinton alleges that on January 18, 2020 he had visitation with his wife. After the visit was over, Clinton, who is disabled and uses a wheelchair, had difficulty leaving the visitation room because of the "narrow [a]isles." ECF No. 1 at 2. Plaintiff told Correctional Officer Ashbury that he was having trouble maneuvering through the narrow passageway and asked if Ashbury could have a porter widen the pathway so he could get through in his wheelchair without running into people who were seated at visiting tables. *Id.* When Ashbury acted like he did not hear him, Plaintiff stated, "never mind, I'll just write it up as an [Americans with Disabilities Act ("ADA")] claim. *Id.* at 3. Ashbury then became "irate" and told Clinton he was acting like a snitch. *Id.*

Clinton left the visiting area to be processed before returning to his housing facility.

Ashbury, who was still visibly upset by Clinton's threat to file an ADA complaint, followed Clinton while making "derogatory remarks." *Id.* Ashbury then asked the correctional officer assigned to search inmates after visitation to step aside so he could search Clinton. During the process, Ashbury "tore the seat cushion" of Clinton's wheelchair. Ashbury then pushed Plaintiff toward "the window where visitors . . . could view [Clinton's] naked disabled body as he tore [Clinton's] clothes off." *Id.*

Correctional Officer Cortez then arrived and assisted Ashbury by using "physical force" to hold Clinton against the window. Cortez ordered Plaintiff to squat and expose his buttocks. *Id.* at 4. Clinton, who weighs approximately 300 pounds, had difficulty balancing and had to use his "face and neck" against the wall as support. Neither Cortez nor Ashbury used a curtain to protect Plaintiff's privacy during the search. *Id.* Clinton filed an inmate grievance about the incident on January 22, 2020. *Id.*

In the days the followed, Cortez conducted at least three more strip searches of Plaintiff. On January 25, 2020, Cortez took Clinton to the search area, where he stripped him of his clothing, stepped "chest to chest" with Plaintiff while Plaintiff was naked, and stated, "Show me something." *Id.* Cortez did not search under Plaintiff's arms or the inside of his mouth but focused on having Plaintiff expose his buttocks. On February 1, 2020, Clinton was in the rear search area and Cortez approached him. Cortez was "irate and boisterous," yelling at Plaintiff to "strip out." *Id.* As Clinton began removing his clothing, Cortez "snatched [Clinton's] shirt, pulling [him] off balance" and causing Clinton's back to "spasm." *Id.* On February 9, 2020, after Plaintiff had visitation with his wife, he was being processed by Correctional Officer Nahn. *Id.* at 4–5. After Plaintiff had stripped down, Cortez approached and told Nahn to move out of the way so he could conduct the search of Plaintiff. *Id.* In doing so, Cortez "continuously and purposefully put his body against [Clinton's], making contact with [Clinton's] naked body parts." *Id.* at 5.

**C.   Discussion**

In his Complaint, Clinton alleges his Eighth Amendment right to be free from excessive force was violated by all Defendants; his Equal Protection and Due Process rights

4

were violated by Pollard, Buckel, Steadman, Ashbury, Cortez, and Nahn; and his First Amendment right to be free from retaliation was violated by Ashbury, Cortez, and Nahn. ECF No. 1 at 5–6. He also raises a state tort law claim of "assault and battery against Pollard, Buckel, Steadman, Ashbury, Cortez, and Nahn. *Id.* at 6. Clinton seeks compensatory and punitive damages. *Id.* at 7.

### 1. Official Capacity Claims

As an initial matter, the Court notes that Plaintiff brings this action against the named Defendants in their individual and official capacities.[2] A suit brought against prison officials in their official capacity is generally equivalent to a suit against the prison itself. *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, prison officials may be held liable only if "'policy or custom'. . .played a part in the violation of federal law." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy*, 594 F.3d at 713. Here, Clinton has failed to include factual allegations that the violations at issue in this action were the result of a policy or custom of the CDCR. As such, Plaintiff fails to state an official capacity claim against any named Defendant, and his official capacity claims must be dismissed.

### 2. Eighth Amendment

Clinton alleges his Eighth Amendment rights were violated when Defendants used

---

[2] Plaintiff is suing Does 1–10 in their individual capacities only. *See* ECF No. 1 at 2.

excessive force against him and/or failed to intervene during the four strip searches that took place between January 18, 2020 and February 9, 2020. ECF No. 1 at 4–5.

        a.      *Respondeat Superior – Pollard, Steadman, Buckel, Cruz, Moore*

Clinton fails to state an Eighth Amendment excessive force claim against Warden Pollard, Deputy Warden Buckel, Associate Warden Steadman, Sergeant Cruz, and Lieutenant Moore. There is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Specifically, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates. *Iqbal*, 556 U.S. at 676–77. Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011).

As to Pollard Buckel and Steadman, Plaintiff merely alleges they "failed to interven[e] to prevent the misuse of force" against him. ECF No. 1 at 6. Plaintiff, however, fails to set forth any specific facts to demonstrate Pollard, Buckel and/or Steadman participated in or directed the alleged excessive force or knew of the incidents when they occurred and failed to act to prevent them. *See Taylor*, 880 F.3d at 1045. Likewise, Clinton fails to state a claim Sergeant Cruz and Lieutenant Moore because he fails to provide *any* factual allegations whatsoever as to Cruz's and/or Moore's conduct, much less any specific facts which plausibly allege personal participation on their parts. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, Clinton has failed to state a plausible Eighth Amendment excessive force claim against Pollard, Buckel, Steadman, Cruz, and Moore. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

        b.      *Doe Defendants*

Clinton also fails to state an Eighth Amendment claim against Doe Defendants 1–10. The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, but Rule 10 does require a plaintiff to include the names of all parties in his

6

complaint. *See* Fed. R. Civ. P. 10(a). Courts especially disfavor Doe defendants in IFP cases because in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal Service to fulfill its duty to serve an unnamed defendant. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d); *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (stating that in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant"); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant.").

"A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Employees/Contractors/Agents OCCC*, 2019 WL 2062945, at *3–4 (D. Haw. May 9, 2019). A plaintiff may also seek discovery to obtain the names of the Does and later amend his pleading to substitute the true names of those defendants, unless it is clear discovery will not uncover their identities, *or that his complaint is subject to dismissal on other grounds*. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (emphasis added) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Here, Plaintiff names "Does 1–10" as Defendants but makes no specific allegations against any individual Doe in relation to the constitutional violations which form the basis of his suit. Simply put, Clinton fails to link any specific constitutional violation to any specific, individual state actor, and he fails to even minimally explain how each individual Doe party he seeks to sue personally caused a violation of his constitutional rights. *See* ECF No. 1 at 3–5; *see also Iqbal*, 556 U.S. at 677. As noted above, "[a] plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks*, 197 F.3d at 1248. As it stands, Plaintiff's Complaint fails to "plead[] factual content that [would] allow[] the court to draw the

7

reasonable inference that [any] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, Plaintiff has failed to state an Eighth Amendment claim against Does 1–10. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

          c.        *Ashbury, Cortez and Nahn*

As for the remaining Defendants, Ashbury, Cortez and Nahn, Clinton alleges they violated his Eighth Amendment rights by using excessive force against him during a series of strip searches that occurred in January and February 2020. ECF No. 1 at 3–5. The Eighth Amendment prohibits the imposition of cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The use of force by a prison official is "excessive" in violation of the Eighth Amendment where the force was not applied in a good-faith effort to maintain or restore discipline but, rather, maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). A prisoner alleging excessive force under the Eighth Amendment must show that "the officials involved acted with 'deliberate indifference' to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

This standard has both an objective and subjective component. The objective component asks whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Husdson*, 503 U.S. at 8. A "serious injury" is not required, but de minimis force is not actionable so long as it is not "of a sort repugnant to the conscience of mankind." *Id*. at 10. Under the subjective inquiry, a plaintiff must show the prison official acted with a "sufficiently culpable state of mind." *Id*. at 8 (internal quotation marks omitted); *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020). This "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6; *Bearchild*, 947 F.3d at 1140. In determining whether the force used was excessive, the Court must consider "the extent of any injury, the need for the use of force, and whether that need supports the amount of force used," as well as "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7. Finally, in evaluating the use of

force, the Court must be mindful to accord to "prison administrators . . . wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986)).

First, to the extent Clinton alleges Ashbury, Cortez and Nahn violated his Eighth Amendment rights by subjecting him to strip searches without sufficient privacy from other inmates, causing him to feel "upset and embarrass[ed]," he fails to state a claim.[3] ECF No. 1 at 4. Subjecting inmates to strip searches generally does not rise to the level of an Eighth Amendment violation. *See, e.g., Somers v. Thurman*, 109 F.3d 614, 622–24 (9th Cir.) (concluding cross-gender visual body cavity searches of male inmates, as well as watching the inmate shower, was not objectively harmful enough to serve as basis of Eighth Amendment claim); *Foster v. Triplett*, 2019 WL 452683, at *6 (C.D. Cal. Jan. 3, 2019) (weekly strip searches did not violate the Eighth Amendment where plaintiff did not allege any facts suggesting the strip searches, in themselves, were so egregiously harmful as to violate the Eighth Amendment), report and recommendation adopted, 2019 WL 450671 (C.D. Cal. Feb. 5, 2019); *Wilson v. Soto*, 2016 WL 825194, at *5 (C.D. Cal. Jan. 21, 2016) (allegations of strip search in the presence of other inmates and female officers insufficient to state an Eighth Amendment claim), report and recommendation adopted, 2016 WL 827747 (C.D. Cal. Mar. 2, 2016).

---

[3] While Plaintiff does not raise a Fourth Amendment claim in his Complaint, the Court notes the Ninth Circuit has held that prisoners retain rights to bodily privacy under the Fourth Amendment. *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010). Strip searches, however, do not per se violate prisoners' Fourth Amendment rights. *See id*. at 974. Rather, a strip search is unreasonable under the Fourth Amendment where it is "'excessive, vindictive, harassing, or unrelated to any legitimate penological interest.'" *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)). In reviewing such a claim, the Court must consider "'. . . the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Thompson*, 111 F.3d at 700 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)); *see United States v. Fowlkes*, 804 F.3d 954, 963 (9th Cir. 2015).

Next, to the extent Clinton alleges Ashbury, Cortez and Nahn used unnecessary physical force in conducting the strip searches, he also fails to state a claim. As to the January 18, 2020 search, Plaintiff alleges that Ashbury and Cortez "[held] him against the glass window." ECF No. 1 at 3. Without more, this is insufficient to plausibly allege the purported force used by Ashbury and Cortez was "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10. Likewise, as to the January 25, 2020 search, Clinton merely alleges Cortez "stepped chest to chest" with him. ECF No. 1 at 4. Plaintiff again fails to state sufficient facts to plausibly allege show Cortez's conduct was "objectively harmful enough to establish a constitutional violation." *Husdson*, 503 U.S. at 8. Such de minimis force is not actionable under the Eighth Amendment. *Id.*

Similarly, the allegation that Cortez used excessive force during his February 1, 2020 search of Plaintiff falls short of stating a plausible excessive force claim. Plaintiff states Cortez "snatched" his shirt from him, causing him to lose his balance. ECF No. 1 at 4. While Clinton alleges he suffered back spasms as a result of losing his balance, without more, this is insufficient to state a plausible claim that Cortez used force with "a knowing willingness that [harm] occur." *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (quoting *Whitney*, 475 U.S. at 321); *see also Hart v. Celaya*, 548 F. Supp. 2d 789, 804 (N.D. Cal. 2008) (granting summary judgment on excessive force claims where plaintiff alleged officer "pushed" him into a door and "jerked" his arm because such conduct constituted only "rough handling," and "the Eighth Amendment does not protect against such de minimis use of physical force").

Lastly, Clinton fails to allege excessive force as to the February 9, 2020 search. He alleges that he was visiting with his wife and Cortez "stared him down," causing Clinton "fear and concern." *Id.* at 4–5. After the visit concluded, Defendant Nahn had begun processing Clinton in the search area when Cortez arrived and told Nahn to move so Cortez could finish the searching process. *Id.* During the search, Cortez "put his body against [Clinton's,] making contact with [Clinton's] body parts. *Id.* at 5. First, Plaintiff fails to allege Nahn used any force whatsoever. Second, as to Cortez, Clinton states only that

10

Cortez brushed up against his body during the search. Plaintiff fails to plausibly allege Cortez used force "maliciously and sadistically" to cause harm. As such, he has not stated an excessive force claim.[4] *Hudson*, 503 U.S. at 6–7.

Based on the foregoing, Clinton has failed to state an Eighth Amendment claim against Ashbury, Cortez and Nahn. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

### 3. Equal Protection

Clinton also alleges he was "denied equal protection of law" by Pollard, Buckel, Steadman, Ashbury, Cortez, Nahn and Does 1–10. *See* ECF No. 1 at 6–7. The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by either (1) showing defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or (2) showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601–02 (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

---

[4] The Court notes that a prisoner may be able to present "a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Here, however, even if the Court liberally construed Clintons claim as one of sexual harassment, he fails to allege Cortez touched him in a sexual manner for the purpose of his own sexual gratification or to humiliate and demean Clinton. *See id.*

Here, Clinton has failed to allege specific facts to show how Defendants discriminated against him because of his membership in that class. Plaintiff also fails to plausibly allege that similarly situated prisoners received different treatment such that Defendants' actions towards him were irrational and arbitrary. Plaintiff's conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. Therefore, he has failed to state an equal protection claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678; *Lopez*, 203 F.3d at 1126–27.

### 4. Due Process

Next, Clinton alleges he was denied his right to due process when Pollard, Buckel and Steadman failed to take disciplinary action against Ashbury, Cortez and Nahn after Plaintiff filed grievances against them. ECF No. 1 at 6. Plaintiff, however, has no stand-alone due process rights related to the administrative grievance process. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that there is no protected liberty interest to a grievance procedure). California's regulations grant prisoners a purely procedural right: the right to have a prison appeal. *See* Cal. Code Regs. tit. 15, §§ 3084-3084.9 (2014). In other words, prison officials are not required under federal law to process inmate grievances in a certain way. Thus, the denial, rejection, screening out of issues, review, or cancellation of a grievance does not constitute a due process violation. *See, e.g., Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015) (stating a prison official's denial of a grievance does not itself violate the constitution); *Towner v. Knowles*, No. S-08-cv-2823-LKK-EFB, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (finding allegations that prison officials screened out inmate appeals without any basis failed to indicate a deprivation of federal rights); *Williams v. Cate*, 1:09-CV-00568-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Accordingly, Plaintiff cannot and does not state a cognizable claim based on the processing and/or denial of any inmate grievance. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678; *Lopez*, 203 F.3d at 1126–27.

### 5. *First Amendment Retaliation*

Next, Clinton alleges Ashbury, Cortez and Nahn violated his First Amendment rights by retaliating against him for telling Ashbury he was going to file an ADA complaint. ECF No. 1 at 6. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

First, an adverse action taken need not constitute an independent constitutional violation. *Watison*, 668 F.3d 1114. Indeed, "the mere threat of harm" may be sufficient. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Courts have found searches, even the prison context, may constitute an adverse action under certain circumstances. *See Cejas v. Paramo*, 2017 WL 1166288, *6 (S.D. Cal. 2017) ("[A]lthough cell searches are a routine part of prison life, a cell search may nonetheless constitute an adverse action," if performed with a retaliatory motive and lacking a legitimate correctional goal."); *see also Lankford v. Taylor,* No. 17-cv-02797-PHX-DWL-JZB, 2019 WL 4600369, at *7 (D. Ariz. Sept. 23, 2019). Thus, a search of a prisoner may constitute an adverse action if the impetus was retaliatory and the search served no penological interest.

Second, a plaintiff's threat to sue is protected conduct under the First Amendment. *Entler*, 872 F.3d at 1039–40 (There is "no distinction between a threat to initiate litigation and the litigation."). Moreover, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d at 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). Consistent with these principles, courts in this Circuit have repeatedly found protected conduct where a plaintiff makes a verbal threat to file a suit or grievance or even request a grievance form. S*ee e.g. Garcia v. Strayhorn*, No. 13-cv-807-BEN-KSC, 2014 WL 4385410, at *7 (S.D. Cal. Sept. 3, 2014) (finding prisoner's verbal threat to file a

13

grievance was protected conduct); *Irvin v. Roldan*, No. 19-cv-1418-AG (KK), 2019 WL 8105897, at *3 (C.D. Cal. Dec. 23, 2019) (finding threats to file a grievance protected conduct); *Hunter v. Harr*, No. 14-cv-9886 R(JC), 2018 WL 6113098, at *6 (C.D. Cal. July 19, 2018), report and recommendation adopted, No. 14-cv-9886 R-JC, 2018 WL 6118555 (C.D. Cal. Aug. 27, 2018) (rejecting argument that an ADA appeal was not protected conduct, stating "[a]n inmate complaint need not expressly seek access to the courts or pursue civil rights litigation or be brought through a prison's formal grievance process for it to be considered a constitutionally protected 'grievance'").

Next, a plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Here, Clinton alleges the first improper strip search came right after he told Ashbury he was going to file an ADA complaint. *See id.* (stating "timing can properly be considered as circumstantial evidence of retaliatory intent").

But even assuming Clinton's exercise of his right to pursue an ADA grievance was "chilled" by the subsequent strip searches, he has not stated a retaliation claim because he has failed to plausibly allege the searches lacked any legitimate penological purpose. *See Rhodes*, 408 F.3d at 567–68 (noting it is the plaintiff's burden to establish the absence of a legitimate penological purpose). The Ninth Circuit has stated that "so long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip search has a legitimate penological purpose." *Michenfelder*, 860 F.2d at 332–33. Here, the searches occurred after Clinton had finished visitation sessions. *See* ECF No. 1 at 3, 5. Because Plaintiff has the burden to prove the absence of a legitimate penological purpose and he has offered no evidence of that, the Court finds that he has not met his burden here. *See Hartman v. Moore*, 547 U.S. 250, 260 (2006) (stating causation is but-for; that is, action colored by a bad motive is not a constitutional violation if the action would have been taken anyway). Therefore, Plaintiff has failed to state a first Amendment

retaliation claim against Ashbury, Cortez and Nahn. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

### 6. State Tort Claims

Lastly, Plaintiff alleges Ashbury, Cortez, Nahn and Does 1–10 are liable under California Civil Code for "assault and battery." ECF No. 6. The Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims at this time. Accordingly, the Court *sua sponte* dismisses Plaintiff's state tort claims. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d at 1112.

### D. Leave to Amend

Given Plaintiff's pro se status, the Court grants him leave to amend to attempt to sufficiently allege a claim if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court hereby:

1. **GRANTS** Plaintiff's Motion to proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $63.33 initial filing fee as well as the remaining balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward

1  payments to the Clerk of the Court each time the amount in the account exceeds $10 in
2  accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST CLEARLY
3  IDENTIFY THE NAME AND CASE NUMBER ASSIGNED TO THIS ACTION.

    3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

    4.    **DISMISSES** the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

    5.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to any previous version of his pleading; Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"); *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated: May 16, 2023

                                            Hon. Dana M. Sabraw, Chief Judge
                                            United States District Court