UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKEITH CLINTON,<br>CDCR #AY1315<br><br>                              Plaintiff,<br><br>vs.<br><br>ASBURY, CORTEZ, NAHN,[1]<br><br>                              Defendants. | Case No.: 3:23-cv-0119-DMS-DEB<br><br>**ORDER: (1) SETTING ASIDE JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b) AND**<br><br>**(2) DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

## BACKGROUND

On January 20, 2023, Markeith Clinton ("Plaintiff" of "Clinton"), a state inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, along with an application to proceed *in forma pauperis* ("IFP"). ECF Nos. 1, 2. The Court granted

---

[1] Plaintiff alternates between the spelling "Nhan" and "Nahn" in his amended complaint. For the sake of consistency, the Court will use the spelling contained in the caption of the amended complaint—"Nahn."

1

Plaintiff's IFP motion and dismissed his complaint without prejudice. ECF No. 5. The Court informed Plaintiff of the pleading deficiencies in his complaint and granted him leave to amend. *See id*. The Court further notified Clinton that if he failed to timely amend, final judgment of dismissal would be entered based on his failure to state a claim and failure to prosecute in compliance with the Court's order requiring amendment. *Id*. at 16 (citing *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")). On July 18, 2023, the Court granted Plaintiff's request for an extension of time to file an amended complaint, giving Plaintiff an additional 45 days–or until September 1, 2023—to do so. *See* ECF No. 7 at 2.

The Court did not receive an amended complaint from Plaintiff by the September 1, 2023 deadline. Thus, on October 10, 2023, it dismissed the case and entered judgment. *See* ECF Nos. 10, 11; *see also Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *see also* Fed. R. Civ. P. 41(b) (providing for involuntary dismissal for failure to prosecute or comply with the federal rules or court order).

On November 13, 2023, the Court received a First Amended Complaint ("FAC") from Plaintiff, via the United States mail.[2] ECF No. 12 (hereafter "FAC"). For the reasons discussed below, the Court construes Plaintiff's FAC as a request to set aside judgment, grants the request, screens the FAC and dismisses it without prejudice and without leave to amend for failure to state a claim.

## REQUEST TO SET ASIDE JUDGMENT

"The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). Accordingly, the Court liberally construes Clinton's filing of his FAC to encompass a motion for relief

---

[2] A duplicate of the FAC was docketed on November 24, 2023. *See* ECF No. 13.

from the judgment under Federal Rule of Civil Procedure 60(b). *see e.g., Johnson v. Nordstrom*, 2024 WL 1012909, at *1 (W.D. Wash. Mar. 8, 2024) (construing untimely amended complaint filed by pro se litigant as a motion for relief from the judgment).

Rule 60(b)(1) provides that a court may relieve a party from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P 60(b)(1); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000). "Excusable neglect 'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness.'" *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 394 (1993)). "[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman*, 231 F.3d at 1223–24.

As discussed above, this Court dismissed the action and entered judgment on October 10, 2023 because Plaintiff had failed to amend his complaint by the September 1, 2023 deadline. ECF No. 10. The Court ultimately received Plaintiff's FAC in the mail on November 13, 2023. FAC at 1. While the envelope is postmarked November 8, 2023 (*id.* at 59), Clinton had signed the FAC on August 30, 2023. *Id.* at 24, 58. And notably, the envelope contains the handwritten notation indicating it was turned over to staff over for mailing on September 1, 2023. FAC. at 60.[3]

---

[3] Under California Department of Corrections and Rehabilitation ("CDCR") regulations, when sending confidential/legal mail, an inmate first presents the mail to a CDCR staffer, who checks the contents in the presence of the inmate. If no prohibited material is discovered, the staffer returns the contents to the envelope and seals it, after which "*[s]taff shall place their signature, badge number, and date across the sealed area on the back of the envelope.*" CDCR Operations Manual § 54010.12. 2 (emphasis added). The Court takes judicial notice of these regulations. *See* Fed. R. Evid. 201(b); *Brown v. Valoff*, 422 F.3d 926, 931 n.7 (9th Cir. 2005) (taking judicial notice

Under the "mailbox rule," a document is deemed "filed at the time inmate delivered it to the prison authorities for forwarding to the court." *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (holding that the *Houston* mailbox rule applies to § 1983 complaints filed by pro se prisoners). Thus, under the mailbox rule, the FAC was timely filed on September 1, 2023. *See Baker v. United States*, 670 F.3d 448, 457 (3d Cir. 2012) ("The Rule of *Houston* thus excludes from the time to file a [document] any time lost to delays caused by prison authorities in transmitting the pro se prisoner's [document] to the district court,"). Because the reason for the delay does not appear to be attributable to Plaintiff and there is no prejudice to defendants, who have not yet been served, the Court finds Plaintiff is entitled to relief under Rule 60(b)(1). *See Bateman*, 231 F.3d at 1223–24. Accordingly, the Court **GRANTS** the request to set aside judgment.

**SCREENING AMENDED COMPLAINT PER 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

The Prison Litigation Reform Act ("PLRA") requires the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

**A.  Standard of Review**

Under 28 U.S.C. § 1915(e)(2) and § 1915A(b), the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not

---

of the CDCR Department Operations Manual as a record of a state agency not subject to reasonable dispute).

4

bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. R. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

B.  **Factual Allegations**

Plaintiff is disabled and uses a wheelchair. FAC at 2 ¶ 6. On January 18, 2020, Clinton had visitation with his wife. At the end of the visit, Clinton noticed there was "no clear

path to exit" the visitation area in his wheelchair. *Id.* at 4 ¶ 12. Clinton told Asbury, a correctional officer working in the visitation area, that he could not maneuver his wheelchair through the narrow aisles and asked Asbury "if he could have the visiting porter/worker widen the pathway so Plaintiff could pass without running into other people who were seated at the visiting tables." *Id.* at 5 ¶ 15.

Asbury acted as if he did not hear Clinton, and responded, "What!". *Id.* at ¶16. Clinton replied, "never mind, I'll just write up a grievance as an [Americans with Disabilities Act] issue." *Id.* Asbury then became "irate" and told Clinton in a raised voice that he was "acting like a [sensitive needs yard] inmate," which is the equivalent to calling Clinton a snitch or protective custody inmate. *Id.* at ¶ 17. At the time, Asbury was assigned to supervise security for contact visits but he "abandoned his post" and followed Clinton to the back processing area where inmates are searched after visitation. *Id.* at 5–6 ¶ 18.

Asbury was still "visibly upset" by Clinton's remark about filing a grievance. *Id.* at ¶ 19. Asbury then told the correctional officer assigned to "the back security area" to switch posts with him so Asbury could conduct the post-visitation search of Plaintiff himself. *Id.* at 6 ¶19. Asbury addressed Plaintiff in a "raised voice and disrespectful tone." *Id.* at 7 ¶ 23. Asbury took Clinton's wheelchair seat cushion, "tore it open" and pulled the foam out, leaving the cushion "destroyed." *Id.* at ¶ 24. Asbury then pushed Clinton toward a window where people in the visitation room could see him and "tore Plaintiff's clothing off" for a strip search. *Id.* at ¶ 26.

At some point, Correctional Officer Cortez joined Asbury and the two "dragg[ed]" Clinton from his wheelchair and held him against the glass window. *Id.* at 7–8 ¶ 28. Cortez then ordered Clinton to bend and expose his buttocks. *Id.* at ¶ 29. To comply, Clinton, who weighs approximately 300 pounds, had to press his face and neck against the window for balance, causing his back to hurt and his legs to shake. *Id*. When Clinton protested that Asbury and Cortez were not following proper protocol, Cortez responded, "So what." *Id.* at ¶ 31. Clinton filed an administrative grievance about the incident on January 22, 2020. *Id.* at ¶ 32.

  On January 25, 2020, Plaintiff had another visit with his wife, after which he again had difficulty maneuvering his wheelchair through the visitation room to get to the back the processing area. *Id.* at 9 ¶ 33. Cortez approached Plaintiff from behind and pushed him in his wheelchair toward the back search area, where he stripped Clinton of his clothing. Once Clinton was naked, Cortez stood "chest to chest" with Plaintiff and ordered him to turn around and "crack it open." *Id.* at ¶ 35. Plaintiff complied, but when he started to stand up, Cortez told him he "wasn't done looking." *Id.* at 9–10 ¶ 37. Clinton asked Cortez to call a supervisor, but Cortez ignored him. *Id.*

  On February 1, 2020, after Clinton completed a visit with his wife, Cortez followed him to the rear search area. Cortez was "irate and boisterous." *Id.* at 10 ¶ 37–38. As Clinton began removing his clothes for his search, Cortez grabbed Clinton's shirt as he was pulling it over his head, causing Clinton to experience back spasms. *Id.* ¶ 39.

  On February 9, 2020, Clinton had a visit with his wife. *Id.* at 11 ¶ 40. During the visit, Cortez "stared Plaintiff down," which made Plaintiff "fearful." *Id.* at ¶ 41. After the visit concluded, Plaintiff went to the search area where Nahn, a correctional officer, was on duty. Cortez came in a told Nhan to move out of the way so that Coretz could conduct the search. *Id.* Cortez then approached Clinton and "put it body against Plaintiff's nude person" while Nhan watched. *Id.* at ¶ 43.

  At some point, Clinton received notice that on February 28, 2020, attorneys representing inmates in a class action, *Armstrong v. Newsom*, 4:94-cv-20307-CW (N.D. Cal.), had filed a motion in that case seeking an injunction preventing RJD staff from retaliating against disabled inmates. *Id.* at 12–13 ¶ 47–48.

  Sometime in November or December of 2020, Clinton was in administrated segregation. *Id.* at 13 ¶ 49. Clinton needed to "get to the nurse's cart" because his blood sugar was low. Nahn pushed Clinton in his wheelchair "at a high rate of speed" which led to Plaintiff's ankle being struck. *Id.* at ¶ 50.

On September 1, 2021, Nhan conducted a search of Clinton's cell during which Nhan "trashed Plaintiff's property" and "took several legal books and did not return them." *Id.* at 14 ¶¶ 51–52.

### C. Parties and Claims

The Court first notes Plaintiff's FAC seeks to sue the following Defendants in their individual capacities: Asbury, Cortez and Nahn. *See id.* at 2–3 ¶¶ 7–9. Unlike his original pleading, Plaintiff's FAC no longer seeks relief against Defendants Pollard, Buckel, Steadman, Cruz, Moore or the group of persons previously labeled and listed in the docket as Doe 1–10. Therefore, the Court **DISMISSES** these Defendants as parties to this action based on Plaintiff's failure to state any claim for relief against them pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

In his FAC, Clinton lists five "causes of action," several of which contain more than one basis for relief, while others overlap or are conflated. As such, the Court will discuss each of Plaintiff's claims for relief as set forth below for purposes of clarity and to better organize its screening analysis.

### D. Discussion

#### 1. 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 40 U.S. 386 U.S. 386, 393–94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed

by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### 2. Excessive Force

Clinton alleges Defendants used excessive force against him on January 18, 2020 and February 9, 2020. FAC at 15 ¶ 60. While Plaintiff couches his excessive force claim as a Fourteenth Amendment violation, because he is a convicted prisoner, the Court liberally construes the claim under the Eighth Amendment. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause).

To prevail on an excessive force claim under the Eighth Amendment, an inmate must show that prison officials applied force "maliciously and sadistically" to cause harm rather than as a "good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). The Eighth Amendment's prohibition of cruel and unusual punishment does not encompass de minimis uses of physical force, provided that the use of force is not the sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10.

As to the January 18, 2020 incident, Clinton fails to allege sufficient facts to state a plausible excessive force claim against Asbury or Cortez. Clinton alleges that after a visit with his wife he and Asbury exchanged words, after which Asbury left his usual post in the visitation room and followed Clinton to the area where inmates are searched before returning to their housing unit. FAC at 6 ¶¶ 20–21. Asbury pushed Clinton in his wheelchair toward a window and "tore" Clinton's clothing off him. *Id.* 7 ¶ 7. At some point, Cortez arrived and he and Asbury pulled Clinton up from his wheelchair, pushed him against the wall and ordered him to "bend and put his hands behind his back [and] hold[] his buttocks open." *Id.* at 8 ¶¶ 28–29. In order to comply, Clinton had to press his face and neck against the window to maintain his balance, causing his back to hurt and his legs to shake. *Id.* ¶ 29.

The alleged conduct described above is not the sort of force "repugnant to the conscious of mankind" and does not violate the cruel and unusual punishment clause of the Eighth Amendment. *See Hudson*, 503 U.S. at 10–11. Here, the only "force" alleged is Asbury and Cortez pulling Clinton him from his wheelchair and holding him against the wall while conducting the strip search. FAC at 12 ¶ 29. The only injury alleged is temporary back pain. This type of de minimus force is insufficient to rise to the level of an Eighth Amendment violation. *See Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (citing *Hudson*, 503 U.S. at 9); *see also Alexander v. Davis*, 2019 WL 6140464, (C.D. Cal. July 12, 2019) (dragging Plaintiff out of his chair by his right arm, performing a rough pat down and squeezing Plaintiff's injured shoulder was not cognizable excessive force); *Ackley v. Carroll*, 2011 WL 2160896, at *8 (E.D. Cal. June 1, 2011) (finding officer pushing an inmate against a wall and kicking his legs apart during a pat-down search was de minimis use of force); *Moore v. Machado*, 2009 WL 4051082, at *5 (N.D. Cal. Nov. 20, 2009) (throwing an inmate against a wall and twisting his arm was a de minimis use of force); *King v. Williams*, No. 2:20-cv-0209-DOC-GJS, 2020 WL 8084167, at *7 (C.D. Cal. Nov. 24, 2020).

Clinton also fails to state a plausible excessive force claim as to the February 9, 2020 incident. Clinton alleges that after a visit with his wife, Nahn was preparing to conduct a strip search of him. FAC at 11 ¶ 42. After Clinton had removed his clothing, Cortez "came in" and told Nahn to move out of the way so he could finish the search. *Id.* Cortez then "came up to Plaintiff's nude person and put his body against [him]. . . making contact with Plaintiff's private parts." *Id.* at ¶ 43. First, Clinton alleges no facts suggesting Nahn used any force against him. And as to Cortez, Clinton alleges only that he briefly got so close to him that he "put his body against Plaintiff." But Clinton again alleges no facts suggesting any force on the part of Cortez, or injury to Clinton as a result and as such fails to state a

claim.[4] *See Watison*, 668 F.3d at 1113 (concluding allegation that correctional officer intentionally rubbed his thigh against plaintiff's thigh while plaintiff was on toilet was insufficient to because the alleged wrongdoing was not objectively harmful enough to establish a constitutional violation).

Based on the foregoing, the Court DISMISSES Plaintiff's excessive force claims as to all Defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.     Criminal and Administrative Law Claims

Clinton seeks relief based on alleged violations of numerous state and federal statutes. FAC at 15–16, 19–20 ¶¶ 58, 67, 77–81.

#### *a.*     **State Statutes**

Clinton alleges several violations of California law, including sections 147, 2600 and 2601 of the California Penal Code; sections 3004, 3084, 3268, 3287, 3380 and 3391 of the California Code of Regulations; and section 33030.3.3 of the CDCR of Operations Manual ("DOM"). FAC at 15 ¶ 67. First, Clinton cannot state a claim based on violations of the California Penal Code. Penal statutes are criminal ones, designed to provide criminal punishment. The Supreme Court "has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort. v. Ash*, 422 U.S. 66, 79 (1975)). And this Court has found no authority to support the existence of a private right of action under these criminal statutes. Indeed, numerous federal courts have found to the contrary. *See Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) (concluding the district court properly

---

[4] A prisoner may be able to present "a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Here, however, even if the Court liberally construed Clintons claim as one of sexual harassment, he fails to allege any facts to suggest Cortez touched him in a sexual manner. *See id*.

dismissed claims brought under several sections of the California Penal Code because those code sections did not create enforceable individual rights); *see also, e.g., Young v. City of Visalia*, 673 F.Supp.2d 1155, 1167 (E.D. Cal. 2010) (finding alleged violation of California Penal Code § 147 does not form the basis of a civil lawsuit and collecting cases finding the same); *Stephen v. Tilestone*, 2021 WL 289379, at *4 (E.D. Cal. Jan. 28, 2021) (stating "plaintiff has not established that California Penal Code § 2600 permits a private right of action"); *Roberts v. Beard*, No. 3:15-cv-1044-WQH-RBM, 2019 WL 332704, at *11 (S.D. Cal. Jan. 25, 2019) ("With regard to Plaintiff's alleged violations of the California Penal Code [§§ 2600, 2651 & 2601], Plaintiff fails to state a claim."). Thus, Clinton has failed to state a claim based on alleged violations of California Penal Code §§ 147, 2600 and 2601.

Clinton has also failed to state a claim arising out of alleged violations of state administrative regulations set forth in Title 15 of the California Code of Regulations or the CDCR DOM. *See, e.g., Nible v. Fink*, 828 F. App'x 463 (9th Cir. 2020) (affirming dismissal of claims based on violations of Title 15 of the California Code of Regulations because the regulations did not create private right of action); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009). ("[S]tate departmental regulations do not establish a federal constitutional violation.")

Based on the above, Plaintiff's claims based on purported violations of the California Penal Code, Title 15 of California Code of Regulations, and CDCR DOM are DISMISSED for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

      **b.**     **Federal Criminal Statutes**

Likewise, Plaintiff's claims arising out of alleged violations of 18 U.S.C. §§ 241, 242, 245, 249 and 371 cannot proceed. These are "criminal statutes that do not give rise to civil liability." *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (stating federal criminal statutes provide no private right of action and cannot form the basis for a civil suit); *Bey v. City of Oakland*, 2014 WL 4220319, at *3 (N.D. Cal. Aug. 25, 2014); *see also Nguyen v. Demus*, 2019 WL 8065846, at *1 (C.D. Cal. Apr. 26, 2019) ("[T]here is no private cause of action inherent in federal criminal statutes."). Accordingly, Plaintiff's

claims alleging violations of 18 U.S.C. §§ 241, 242, 245, 249 and 371 are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. *42 U.S.C. § 1997*

In addition, Plaintiff's claim based on a purported violation of 42 U.S.C. §§ 1997a–1997c (also known as the Civil Rights of Institutionalized Persons Act ("CRIPA")) must be dismissed. CRIPA does not authorize a private right of action. *See McRorie v. Shimoda*, 795 F.2d 780, 782 n. 3 (9th Cir. 1986). Rather, it permits the Attorney General of the United States to institute or intervene in a civil action to protect institutionalized persons against a pattern of violations of their rights. *See* 42 U.S.C. § 1997a–c. Thus, the claim is DISMISSED. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Equal Protection

Next, Plaintiff contends Defendants violated his right to equal protection. FAC at 18 ¶ 73. The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. Calif. Dept. of Corrs. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, *Hartmann*, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601–02 (2008). An Equal Protection claim may also exist where a policy that is neutral on its face has a disproportionate, or "disparate," impact on an identifiable group. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977).

Plaintiff alleges he is member of a protected class because he is disabled, but "the disabled do not constitute a suspect class for equal protection purposes."[5] *Pierce v. County*

---

[5] Plaintiff also alleges he is a member of a "protected class" based on his status as a class member in *Armstrong v. Newsom*, 4:94-cv-20307-CW (N.D. Cal.). FAC at 17 ¶ 60. *Armstrong* involves a

*of Orange*, 526 F.3d 1190, 1225 (9th Cir. 2008). Moreover, Plaintiff fails to allege he was intentionally singled out for disparate treatment by any Defendant *because* he is disabled. *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir. 2001) (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("*Feeney*")). "'Discriminatory purpose'. . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279 (internal citation omitted). The Court therefore DISMISSES Plaintiff's equal protection claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5.     **ADA and RA**

Clinton alleges Defendants violated his rights under the ADA and the Rehabilitation Act ("RA"). "Title II of the ADA and Section 504 of the RA both prohibit discrimination on the basis of disability." *Lowell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). To state an ADA claim, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotations omitted). Similarly, to state an RA claim, a plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise

---

"certified class of all present and future California state prison inmates and parolees with disabilities [who] sued California state officials in their official capacities, seeking injunctive relief for violations of the RA and the ADA in state prisons." *See Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997). But being a class member in a class action does not convey "protected status" for equal protection purposes.

qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.*

Here, Plaintiff fails to state an ADA or RA claim because he has failed to identify what benefit he was denied by Defendants. In addition, he fails to plausibly allege to have been discriminated against *because* of his disability. *See Armstrong*, 124 F.3d at 1023; *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). Moreover, Clinton seeks declaratory and monetary damages against Defendants in their individual capacities. *See* FAC at 23–24 ¶¶ 97–98. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

For these reasons, the Court DISMISSES Plaintiff's ADA and RA claims as to all Defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6.     Retaliation Claim

Finally, Plaintiff raises a First Amendment retaliation claim against Asbury and Cortez, alleging they conducted the January 18, 2020 strip search on him in retaliation for his threat to file a grievance against Asbury. FAC at 18, 21 ¶¶ 72, 86–87.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Adverse actions include threats of discipline, transfer, or harm and do not need to be an independent constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). As for the fifth element of the test, "the prisoner plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (internal quotations and citations omitted). "A plaintiff successfully pleads this element by alleging, in addition to

a retaliatory motive, that the defendant's actions were arbitrary and capricious or that they were "unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114–15 (internal quotations and citations omitted).

Here, Clinton alleges Asbury and Cortez conducted the January 18, 2020 strip search in retaliation for Clinton's threat to file an administrative grievance. FAC at 18, 21 ¶¶ 72, 86–87. After Clinton's visit with his wife, he asked Asbury for assistance clearing a path for Clinton's wheelchair to maneuver through the visitation area. When Asbury appeared to ignore his request, Clinton stated to Asbury, "[N]evermind I'll just write it up [a] grievance as an ADA issue." *Id.* at 5 ¶ 16. Asbury became irate and told Clinton he was acting like a "snitch." *Id.* at ¶ 17. Shortly thereafter, Asbury switched posts with another correctional officer who was conducting strip searches of inmates returning to their housing unit after visitation. Cortez later joined Asbury in conducting the search. *Id.* at ¶ 18

First, Plaintiff fails to state a retaliation claim against Cortez because nothing alleged in the FAC suggests Cortez was aware of Plaintiff's threat to file a grievance. Thus, Clinton has failed to plausibly allege Cortez participated in the search *because* of Clinton's threat. *See Rhodes*, 408 F.3d at 567–68.

As for Asbury, even assuming he conducted the search because Clinton had threatened to file a grievance, Clinton has failed to plausibly allege the absence of a legitimate penological interest. Clinton acknowledges it is compulsory for inmates to be strip searched after visitation, and before returning to their housing unit. FAC at 5–6 ¶ 18. Prison officials have a legitimate penological interest in ensuring inmates do not obtain and/or bring contraband into the housing units after contact visits with persons from outside of the prison. *See Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010) (citation omitted) ("Controlling contraband within a prison is a legitimate penological interest and the policy [of conducting visual strip searches of inmates upon their return from outside work assignments] is reasonably related to that interest."); *Michenfelder v. Sumner*, 860 F.2d 328, 332–33 (9th Cir. 1988) ("[S]o long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell a visual strip search has a legitimate

penological purpose."). Because Plaintiff has the burden to allege the absence of a legitimate penological purpose and he has offered no evidence of that, he has failed to state a retaliation claim against Asbury. The Court therefore DISMISSES Plaintiff's retaliation claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

## CONCLUSION AND ORDER

For the reasons discussed above, the Court:

(1) **GRANTS** Plaintiff's request to set aside judgment pursuant to Rule 60(b).

(2) **DISMISSES** all claims and causes of action in Plaintiff's First Amended Complaint as alleged against Defendants Asbury, Cortez, and Nahn for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Because Plaintiff has already been provided a short and plain statement of his pleading deficiencies, as well as an opportunity to amend those claims to no avail, the Court finds granting further leave to amend these claims would be futile. *See Schmier v. U.S. Ct. of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend).

(3) **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

(4) **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and close the file.

**IT IS SO ORDERED.**

Dated: May 7, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court